WESTERN OHIO NATIONAL BANK & TRUST COMPANY, APPELLANT, *v.* CONTINENTAL GRAIN COMPANY ET AL., APPELLEES.

(No. 1155 — Decided June 23, 1986.)

*McCulloch, Felger, Fite & Gutmann Co., L.P.A.,* and *Dale G. Davis,* for appellant.

*Roger F. Carroll,* for appellee Continental Grain Co.

*Thomas H. Graber,* for appellee Marlou Foods, Inc.

*Robert J. DeLambo,* for appellee Landmark, Inc.

*Daniel C. Schipfer, Jr.,* for appellee Keller Grain & Feed, Inc.

WOLFF, J. The Western Ohio National Bank and Trust Company ("bank"), plaintiff-appellant, appeals from summary judgments granted by the Darke County Court of Common Pleas in favor of Continental Grain Company ("Continental"), Landmark, Inc., Marlou Foods, Inc. ("Marlou") and Keller Grain & Feed, Inc. ("Keller"), defendants-appellees.

On or about January 27, 1981, Robert L. Hocker and Judy A. Hocker, residents of Darke County, Ohio, executed and delivered to the bank their promissory note in the original amount of $125,010 together with interest. The promissory note in question remains unpaid. In order to secure the indebtedness evidenced by the promissory note, on the same date the Hockers executed and delivered to the bank a security agreement for the purpose of granting to the bank a security interest in "all farm machinery and equipment whether presently owned or hereafter acquired and all harvested

and stored grain from . [the] 1981 season." The Hockers also signed a financing statement to give notice to creditors of the security interest of the bank, which financing statement was filed in the Darke County Recorder's office on February 9, 1981 as Document No. 202. The description of collateral contained in the financing statement was identical to that in the security agreement.

The Hockers farmed several parcels of land in 1981, all of which were located in Darke County, Ohio; and, on several occasions, beginning November 5, 1981, the Hockers sold certain of their harvested grain from the 1981 season to Continental for a total sum of $41,736,64. On November 25, 1981, the Hockers sold certain of their harvested grain from the 1981 season to Landmark for a total sum of $3,287.80. On various dates beginning December 9, 1981, the Hockers sold certain of their harvested grain from the 1981 season to Keller for a total sum of $86,579.79. On December 8, 1981, the Hockers sold certain of their harvested grain from the 1981 season to Marlou for a total sum of $4,922.88.

Plaintiff bank filed its complaint against these defendant buyers in the Court of Common Pleas of Darke County, case No. 45995, on November 4, 1983, alleging, in separate causes of action against each buyer, that the bank had a valid and perfected security interest against certain harvested and stored grain of Robert L. Hocker and Judy A. Hocker which was taken in order to secure the payment of a promissory note given by the Hockers to the bank. The complaint further alleged as to each buyer that the Hockers sold the harvested and stored crops to the buyer, that said purchases were subject to the perfected security interest of the bank in those crops and that the bank was entitled to recover from each buyer the fair market value of the crops purchased by that buyer as determined by the purchase price.

Each buyer timely filed an answer setting forth numerous defenses, specifically including, in various forms, a defense that the lien claimed by the bank in the crops purchased by that buyer was invalid because of the bank's failure to describe the real estate upon which the crops were grown. Defendants Continental, Landmark, and Keller specifically admitted the purchases of grain from the Hockers alleged in the complaint. The answer of defendant Marlou denied any purchase.

The plaintiff bank's sole assignment of error is:

"The trial court erred in ruling that plaintiff's lien upon 'all harvested and stored grain from [the] 1981 season' was invalid because of the failure of plaintiff's security agreement and financing statement to describe the real estate upon which the harvested and stored grain had been grown."

The issue presented on appeal is whether the security agreement, as required by R.C. 1309.14, and the financing statement, as required by R.C. 1309.39, were inadequate because they omitted descriptions of the land on which the Hockers' crop was grown during the 1981 growing season.

R.C. 1309.14 (UCC 9-203) provided in part:

"(A) Subject to the provisions of section 1304.14 of the Revised Code on the security interest of a collecting bank and section 1309.11 of the Revised Code on a security interest arising under sections 1302.01 to 1302.98 of the Revised Code, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

"(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a

security agreement which contains a description of the collateral *and in addition, when the security interest covers crops growing or to be grown* or timber to be cut, *a description of the land concerned;* and

"(2) value has been given; and

"(3) the debtor has rights in the collateral.

"(B) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in division (A) of this section have taken place unless explicit agreement postpones the time of attaching." (Emphasis added.)

R.C. 1309.39 (UCC 9-402) provided in part:

"(A) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. *When the financing statement covers crops growing or to be grown,* timber to be cut, or minerals or the like, including oil and gas, or accounts subject to division (E) of section 1309.03 of the Revised Code, or when the financing statement is filed as a fixture filing pursuant to section 1309.32 of the Revised Code and the collateral is goods which are or are to become fixtures, *the statement must also comply with division (E) of this section.* * * *

"* * *

"(E) A financing statement covering crops growing or to be grown or timber to be cut or minerals or the like, including oil and gas, or accounts sub-

ject to division (E) of section 1309.03 of the Revised Code, or a financing statement filed as a fixture filing pursuant to section 1309.32 of the Revised Code must show that it covers this type of collateral, must recite that it is to be filed for record in the real estate records, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner or record lessee." (Emphasis added.)

This case does not involve the sufficiency of real estate descriptions, as do many of the reported cases, but whether any real estate description whatsoever is required in the security agreement and financing statement.

Plaintiff bank's position, on appeal, and in the trial court, is that the security agreement and financing statement did not require descriptions of the land upon which the crop was growing because the bank claimed a security interest in only the "harvested and stored crop."

The trial judge determined that the bank's position lacked merit, stating the following:

"The Code provides for obtaining a security interest on after-acquired property. In the Court's opinion the provisions of the Code clearly evidence an intent that, when the after-acquired property is property growing or to be grown on real estate, in order to obtain and perfect a security interest thereon certain additional requirements must be met.

"Again, there can be no question that the grain that Plaintiff attempted to obtain a security interest in was grain that did not yet exist at the time that the documents were executed. As

such there is no question that the reference to grain was in fact a reference to crops growing or to be grown.

"As a matter of law the sections of the Ohio Revised Code cited above require the security agreement to contain a description of the real estate upon which the crops are growing or will be grown and further require the financing statement (if an effort to perfect is made) to contain such a description as well as the names of the persons owning the real estate so described.

"No effort was made by Plaintiff to describe the real estate in question.

"The court finds that as a matter of law Plaintiff has no security interest in the grain sold to Continental by the Hockers. Since no security interest exists same could not have been perfected. * * *"

Because we agree with the trial judge's analysis, we affirm.

The bank argues that there is a difference between a growing and harvested crop, and that a security interest and financing statement covering a harvested crop need not contain the real estate descriptions required by R.C. 1309.14 and 1309.39.

We do not suggest the contrary where the security agreement is entered into and the financing statement completed and filed *after* the crop is harvested and stored. At that point, the lands where the crop was grown become irrelevant with respect to third persons who might thereafter take an interest in the crop.

However, the situation here involves the bank's attempt to take a security interest in a harvested crop before the seed is even in the ground. Under these circumstances, it is obvious to us that the security interest (R.C. 1309.14) and financing statement (R.C. 1309.39) "cover crops growing or to be grown."

It matters not that the bank only wanted a security interest in the harvested crop. As a practical matter, the bank was no more interested in the crop as it grew in the field than were the purchasers of the crop, such as Continental and the other defendants.

Because both the farm lender and the crop buyer transact with the debtor-farmer with reference to the harvested crop, but often while the crop is still in the ground, we conclude that the real estate descriptions required of the security agreement by R.C. 1309.14 and of the financing statement by R.C. 1309.39 are essential to security agreements made and financing statements filed when the crops are still growing or yet to be grown, if these security agreements and financing statements are to accomplish the attachment and perfection of the lender's intended security interest in the harvested crop.

To conclude otherwise would relegate the real estate description requirements of R.C. 1309.14 and 1309.39 to situations which, in reality, do not exist.

The bank argues, and we agree, that R.C. 1309.15 (UCC 9-204) permits the acquisition of a security interest in after-acquired property. However, this does not negate the requirements of R.C. 1309.14 and 1309.39 of real estate descriptions where the crops are growing or to be grown.

The bank contends that the authorities cited by the buyers and relied on by the trial court are not helpful because the lenders in those cases attempted to take a lien on the crops as they were growing in the field, whereas here the bank sought only a security interest in the harvested crop. While it may be true that these lenders attempted to take a security interest in a growing crop, the sales of crops which gave rise to the litigation in these cases occurred *after harvest*.

Yet, without exception, the lender with the inadequate real estate description in its security agreement and financing statement lost. *First Natl. Bank of Atoka* v. *Calvin Pickle Co.* (Okla. 1973), 516 P. 2d 265; *Gold Kist, Inc.* v. *Farmers & Merchants Bank* (Ala. 1983), 425 So. 2d 452. See, also, *Piggott State Bank* v. *Pollard Gin Co.* (1967), 243 Ark. 159, 419 S.W. 2d 120; *Chanute Production Credit Assn.* v. *Weir Grain & Supply, Inc.* (1972), 210 Kan. 181, 499 P. 2d 517.

*In re Roberts* (D. Kan. 1984), 38 Bankr. 128, relied upon by the bank, cannot be harmonized with these other cases. In *Roberts,* a bankruptcy judge determined a bank's security agreement and financing statement, which described "225 acres of growing wheat" but not the real estate, nevertheless were effective upon the severance of the wheat, which was harvested and stored prior to the commencement of the bankruptcy case. Although the analysis should be the same, whether the competing parties are creditor and trustee, or creditor and purchaser, it may well be that the concerns of the bankruptcy judge, in determining the conflict between creditor and trustee, were different than ours in determining this dispute between creditor and purchaser. Cf. *In re Mount* (S.D. Ohio, Bankr. 1968), 5 UCC Rep. Serv. 653, which accords with the position we adopt in this case.

Finally, the bank argues that, according to the buyers, a farm lender's attempted security interest in the farmer-debtor's crop for a period of five years would not be valid unless the security agreement and financing statement described the real estate, and that this is not required by R.C. Chapter 1309.

We do not agree. So long as the security interest is intended to cover crops growing or to be grown, we believe the real estate descriptions are required in the security agreement and financing statement.

Since real estate descriptions may vary from year to year due to the farmer's farming different tracts of land, the security agreement and financing statement can be amended to reflect the current situation. See R.C. 1309.39(D).

The judgment of the Darke County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KERNS and WILSON, JJ., concur.